UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JANNAH JENKINS,

      Plaintiff,

v.                                     Case No. 8:17-cv-2499-T-CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

      Defendant.
_____/


## O R D E R

     The Plaintiff seeks judicial review of the Commissioner's denial of her claim

for Disability Insurance Benefits (DIB).  For the reasons discussed below, the

Commissioner's decision is affirmed.

### I.

     The Plaintiff was born in 1966, obtained a GED, and has past relevant work as

a payable clerk, administrative assistant, and engineer technician.  (R. 1386, 1404,

1406).  In October 2011, the Plaintiff applied for DIB, alleging disability as of January

3, 2010, due to a lower back pain/injury, lumbar radiculopathy, depression, anxiety,

asthma, hypothyroidism, migraines, and gastroesophageal reflux disease. (R. 158-164,

187219, 227).  The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration.  (R. 65, 75).

Following a hearing in August 2013, an Administrative Law Judge (ALJ) affirmed the SSA's decision (R. 21-37), and the Appeals Council subsequently denied the Plaintiff's request for review (R. 1-4).  The Plaintiff thereafter sought judicial review of the matter, and in August 2016, the district court reversed and remanded the case because the ALJ failed to address the findings of the Plaintiff's treating doctors and because the ALJ's decision did not indicate that he considered the record as a whole.  (R. 1482-1491).

On remand, a different ALJ conducted a hearing on the matter in May 2017.  (R. 1398-1429).  The Plaintiff was represented by counsel at that hearing and testified on her own behalf.  (R. 1404-22).  The ALJ also took testimony from a vocational expert (VE).  (R. 1423-27).

In a decision dated August 22, 2017, the ALJ found that the Plaintiff: (1) was insured through December 31, 2014, and had not engaged in substantial gainful activity since her alleged onset date; (2) had the severe impairments of lumbar disc protrusion and bulges; major depression, single episode; generalized anxiety disorder; and obesity; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, subject to certain

limitations;[1] and (5) was not capable of performing her past relevant work but was able to perform jobs that exist in significant numbers in the national economy. (R. 1372-1388). In light of these findings, the ALJ concluded that the Plaintiff was not disabled prior to December 31, 2014, her date last insured. (R. 1388).

The Plaintiff thereafter timely filed a complaint with this Court (Doc. 1), and the case is now ripe for review.

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

---

[1] These limitations included that the Plaintiff: (1) could occasionally climb, balance, stoop, kneel, crouch, and crawl; (2) could not climb ladders, scaffolds, ropes, or work at open, unprotected heights; (3) could not be exposed to extreme industrial vibrations and the operation of dangerous machinery; (4) could not drive motorized vehicles; (5) could understand, carry out, and remember simple, routine, and repetitive tasks; (6) could make basic decisions and adjust to basic changes in the work setting; and (7) could not engage in more than frequent interaction with the public and not in crowded environments.

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

To determine whether a claimant is eligible for either DIB, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018)[3] (citing 20 C.F.R. § 404.1520(a)(4)). Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty*, 245 F.3d at 1278 (quotation and citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Indeed, it is the province of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[4] Thus, the Court's role is confined to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211. Where this quantum of evidence exists, the Court must affirm the

---

[4] Decisions of the former Fifth Circuit issued prior to October 1, 1981, bind this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Commissioner's decision "even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Philips*, 357 F.3d at 1240 n.8).

III.

The Plaintiff raises five arguments on appeal: (1) the ALJ failed to properly consider the opinions of three of the Plaintiff's treating doctors; (2) the ALJ failed to evaluate the side effects stemming from the Plaintiff's medications; (3) the ALJ erred in finding that the Plaintiff's daily activities undermined her credibility as well as the opinions of her treating physicians; (4) the ALJ's stated reasons for discounting the Plaintiff's subjective complaints and credibility are flawed both legally and factually; and (5) the ALJ's RFC assessment and his hypothetical to the VE are unsupported by substantial evidence.[5] (Doc. 21). The Commissioner counters that all of the Plaintiff's contentions are without merit. (Doc. 23).

After a thorough review of the record, the pleadings, and the parties' submissions, the Court finds no basis for reversal or remand.

A.
*Treating Doctors' Records and Opinions*

The Plaintiff's first claim of error relates to the ALJ's consideration of the opinions of three of the Plaintiff's treating doctors—namely, chiropractor Robert Bock, D.C; psychotherapist Deborah Downs-Spencer, Ph.D.; and psychiatrist Ashok Patel, M.D. Ordinarily, the medical opinions of a claimant's treating doctors must be given "substantial or considerable weight" absent a showing of "good cause" to the

---

[5] The Court has re-organized and re-ordered the Plaintiff's arguments for purposes of its analysis.

contrary. *Hargress*, 883 F.3d at 1305 (quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).[6] Under Eleventh Circuit precedent, good cause exists when (1) the treating physician's medical opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the medical opinion is conclusory or inconsistent with the treating doctor's own medical records. *Winschel*, 631 F.3d at 1179 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). If an ALJ finds that the treating doctor's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting it, and those reasons must be supported by substantial evidence. *Hargress*, 883 F.3d at 1305-06.

In evaluating a treating doctor's medical opinion, the ALJ should consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; (5) the doctor's area(s) specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c).[7] The ALJ is not required to explicitly

---

[6] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)).

[7] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed in October 2011, the prior version of the regulation applies here.

address each of these enumerated factors, *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011), and the Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it," *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

The ALJ here opted to accord the opinions of doctors Bock, Downs-Spencer, and Patel "little weight" (R. 1384-85), which the Plaintiff argues is contrary to the record, based on mischaracterizations and omissions, and due to an incorrect application of the regulatory standards. The Court will address each of these doctor's opinions in turn.

### 1. Dr. Bock

The Plaintiff began chiropractic treatment with Dr. Bock in late August 2013. (R. 1869-77). Roughly two years later, in June 2015, Dr. Bock authored a letter in which he outlined his treatment of the Plaintiff and advised that, while the Plaintiff had experienced a reduction in her symptoms, she did not seem able to maintain improvement over time. (R. 1869). Dr. Bock offered a poor prognosis for the Plaintiff, believing that her problems would only worsen over time, that prolonged sitting, standing, and walking were "contraindicated," that lifting, carrying, and handling objects would be "problematic," and that the Plaintiff was disabled. *Id.*

The ALJ discounted Dr. Bock's June 2015 letter because he was a chiropractor who is "not an acceptable medical source." (R. 1384). The ALJ also noted that Dr. Bock only began treating the Plaintiff in August 2013, just a few months prior to her

date last insured, and thus concluded that his opinions pertained to a "very minimal piece of the timeframe at issue." *Id.*

The Plaintiff's assertion that the ALJ's determination was legal error is without merit. Pursuant to the pertinent Regulations, Dr. Bock was not considered an "acceptable medical source," and as such, was not qualified to provide a "medical opinion." *See* 20 C.F.R. § 404.1513(d). An acceptable medical source is defined as "one of the sources described in [section] 404.1513(a) who provides evidence about [a claimant's] impairments." *Id.* at § 404.1502. Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists only. *Id.* at §§ 404.1513(a). In contrast, "other sources" include, but are not limited to, certain medical professionals, such as chiropractors. *Id.* at § 404.1513(d).

Only acceptable medical sources can be considered treating sources and can render medical opinions that may be entitled to controlling weight. Social Security Ruling (SSR) 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Evidence and opinions from other sources, however, should be considered with the record as a whole. *Id.* at *3. The same factors utilized in evaluating medical opinions from acceptable medical sources can also be employed in evaluating medical opinions from other sources. *Id.* at *4-5.

As a chiropractor, Dr. Bock was not an "acceptable medical source" who could offer a "medical opinion." Thus, to the extent that the ALJ did not afford Dr. Bock's opinions significant weight, he was not required to do so. In any event, as the

Commissioner notes, the ALJ expressly considered Dr. Bock's opinions and articulated sufficient and adequately supported reasons for finding that those opinions were only minimally relevant to the time period at issue. *See* (R. 1384).

## 2. *Dr. Downs-Spencer*

Unlike Dr. Bock, the Plaintiff's treating psychotherapist/psychologist, Dr. Downs-Spencer, is considered to be an acceptable medical source whose opinions are ordinarily entitled to substantial or considerable weight unless there is good cause to the contrary. The Plaintiff received mental health treatment from Dr. Downs-Spencer from 2009 to 2010 and again from 2012 to early 2013. In January 2013, Dr. Downs-Spencer authored a letter in which she described her care of the Plaintiff. (R. 1338). She offered that the Plaintiff had "an episode of depression and 'really high anxiety,'" with "episodes of tearfulness and irritability." *Id.* She stated that the Plaintiff "reported a desire to work and feeling frustrated that the symptoms associated with her mood disorder interrupted her ability to work." *Id.*

In the ALJ's assessment of how Plaintiff's mental health conditions affected her RFC, he discussed Dr. Downs-Spencer's treatment records (R. 1382) but opted to give her opinion little weight (R. 1385). In doing so, the ALJ stated that Dr. Downs-Spencer's opinion was inconsistent with the treatment records, which evidenced that the Plaintiff's sadness, tearfulness, and anxiety appeared to be triggered by certain events but were not "an ongoing problem." *Id.* The ALJ also explained that Dr. Downs-Spencer's opinion did not cohere with the generally unremarkable mental status examinations of the Plaintiff during the relevant time period, and with the

Plaintiff's ability both to care for herself and to conduct activities of daily living. *Id.* The ALJ additionally noted that Dr. Downs-Spencer's conclusion about the Plaintiff's ability to work did not specify any work-related abilities and limitations and improperly intruded upon the ultimate issue of disability, which was reserved for the Commissioner. *Id.*

Despite the Plaintiff's urging to the contrary, the ALJ's stated reasons provide good cause for discounting Dr. Downs-Spencer's opinions. As a threshold matter, the Court is not convinced that Dr. Downs-Spencer's January 2013 letter qualifies as a "medical opinion," as defined in the Regulations. The Court notes in this regard that, while Dr. Downs-Spencer describes her treatment and the Plaintiff's self-reports, she does not provide any specific judgments about the nature and severity of the Plaintiff's impairments, what the Plaintiff can or cannot do with her impairments, or any specific limitations resulting from those impairments. *See Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)).

Furthermore, although the Plaintiff seeks to characterize Dr. Downs-Spencer's treatment records and opinions differently than the ALJ did, she fails to meaningfully contradict the ALJ's reasons for discounting the doctor's opinions. The Court therefore cannot agree that the ALJ's evaluation of the treatment records is unsupported by substantial evidence or otherwise in error. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2018) ("Under a substantial evidence standard of review, [the plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting

the ALJ's conclusion.") (citations omitted).  The ALJ provided a justification for his characterization of Dr. Downs-Spencer's treatment notes and opinions, and it is not the Court's role to second-guess that assessment.  *Hunter*, 808 F.3d at 823.

### 3.      *Dr. Patel*

Like Dr. Downs-Spencer, the Plaintiff's psychiatrist, Dr. Patel, is considered an acceptable medical source whose opinion is ordinarily granted deference.  The Plaintiff sought psychiatric treatment from Dr. Patel from 2009 through 2016.  During the course of this treatment, Dr. Patel provided three mental functional capacity assessments of the Plaintiff—one before the Plaintiff's date last insured in May 2012 (R. 2057-66), and two after the date last insured, in March 2015 (R. 2052-56) and October 2016 (R. 1995-97, 2049-51).  The ALJ gave these assessments little weight, explaining that Dr. Patel's treatment notes were "not fully reliable in and of themselves" because they were "internally inconsistent," contained "wildly inconsistent self-reported systems, but always consistently normal mental status examinations."  (R. 1384).  He further found that Dr. Patel's assessments conflicted with the doctor's own findings and were accompanied by little narrative support, which itself was "internally inconsistent."  (R. 1384-85).

The Plaintiff urges that the ALJ's summation of Dr. Patel's treatment records as well as his evaluation of the doctor's opinions are based on a misreading of the evidence.  In particular, the Plaintiff points to the ALJ's following statement, which she claims is inaccurate:

> [T]he claimant usually indicates that her functioning, mood, sleep, appetite, energy, interests, hopefulness and self-esteem as "fair" or

"good," and generally rates her feelings at a high 7 to 8 on a scale of 1 to 10. While there are certainly exceptions to these self-reported ratings at times throughout the period at issue, when the claimant reports rates [*sic*] her feelings at a level of 4 to 5, or lower, out of 10 and reports problems in all of the categories listed above, mental status examination findings are nonetheless routinely unremarkable.

(R. 1382) (internal citations omitted).

The Plaintiff argues that she did not "usually" rate her symptoms as fair or good, that her symptoms were not controlled with medication, and that her normal mental status examinations during her visits to Dr. Patel "in no way reflect how she does outside of his office while dealing with the normal stressors of life." (Doc. 21 at 19-20). While the Plaintiff may well be correct that she more often than not reported her symptoms as a "problem" or "fair," or her feelings on the lower level of the ten-point scale, that does not detract from the ALJ's conclusion that her mental status examinations were unremarkable. The Plaintiff does not dispute this fact, but rather asserts that her behavior in the doctor's office should not be used against her. This contention is unpersuasive.

Moreover, notwithstanding the Plaintiff's conclusory statements to the contrary, she does not cite any evidence that undermines the ALJ's conclusions that she often reported an improving condition and no new complaints; that she was stable on medications; and that Dr. Patel's opinions were inconsistent with his treatment records and minimally explained. Although the Plaintiff may disagree with the ALJ's discussion and treatment of Dr. Patel's records and opinions, she provides no valid basis for overturning the ALJ's evaluation of the same. Given the Court's limited role

in reviewing the ALJ's factual determinations, it is constrained to find that the ALJ's election to give Dr. Patel's opinions little weight is supported by substantial evidence.

B.

*Plaintiff's Subjective Complaints and Credibility*

The Plaintiff's second, third, and fourth arguments relate to the ALJ's evaluation of the Plaintiff's subjective allegations and his decision to discount her credibility regarding same. As such, the Court addresses these three arguments together.

As noted above, at step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and her ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an evaluation based on all the relevant evidence of record what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* at § 404.1545(a)(1). As a result, in rendering the RFC, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record, all of the claimant's medically determinable impairments (both severe and non-severe), the total limiting effects of each impairment, and the claimant's subjective symptoms. *Id.* at §§ 404.1520(e), 404.1545(a); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

The evaluation of a claimant's subjective symptoms is governed by the "pain standard." *Dyer*, 395 F.3d at 1210. Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence

14

that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Where a claimant satisfies this "pain standard," the Regulations dictate that the ALJ then assess the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c); *see also* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (S.S.A., Oct. 25, 2017) (applicable as of Mar. 28, 2016). Factors relevant to this evaluation include the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms; medications and treatments available to alleviate the symptoms; the type, dosage, effectiveness, and side effects of any medication used to relieve pain or other symptoms; how the symptoms affect the claimant's daily activities; and the claimant's past work history. *Id*. A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (citations omitted).

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513. 517 (11th Cir. 1984)). If the ALJ elects not to credit the claimant's subjective testimony, however, he must articulate explicit and adequate reasons for doing so. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). An ALJ "need not cite

particular phrases or formulations" in this evaluation, so long as the reviewing court can be satisfied that he "considered the claimant's medical condition as a whole." *Id.* at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (internal quotation marks omitted). A reviewing court will not disturb a clearly articulated credibility finding that is supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

### 1. *Side Effects from Medications*

The Plaintiff asserts that the ALJ's decision is flawed because he failed to consider the side effects that were caused by her medications. (Doc. 21 at 32-33). At the August 2013 hearing, the Plaintiff testified in this regard that she could not work, in part, because she took narcotics three times daily, which prevented her from "function[ing] normally," impaired her memory, and rendered her concentration "not there." (R. 46). She further claimed that she napped in the morning and the afternoon after she took her pain medication and that her hands shook. (R. 54). At the March 2017 hearing, the Plaintiff similarly testified that she experienced shakes, tremors, loss of concentration, and sleepiness from her medications. (R. 1418).

In his decision, the ALJ touched upon these complaints in summarizing the Plaintiff's testimony at both hearings. (R. 1378). Nonetheless, the Plaintiff argues that, despite acknowledging her testimony that she suffered from adverse reactions to her medications, the ALJ erred by ignoring these complaints in rendering both his credibility and RFC findings. (Doc. 21 at 32-33).

An ALJ's evaluation of a claimant's subjective symptoms often include a consideration of the alleged side effects from medications. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)). Indeed, the Eleventh Circuit has long made clear that "when there is evidence in the record that the claimant is taking medications, and it is conceivable that the 'side effects of medication could render a claimant disabled or at least contribute to a disability,' the ALJ has an obligation to elicit testimony or make findings on the effects of the medications on the ability to work[.]" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 949 (11th Cir. 2010) (quoting *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981)). On the other hand, "[w]here a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, the ALJ does not err in failing 'to inquire further into possible side effects.'" *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) (quoting *Cherry v. Heckler,* 760 F.2d 1186, 1191 n.7 (11th Cir. 1985)); *see also Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990) (holding that where the claimant did not complain about the side effects from her prescription medications, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns from her doctors about side effects, substantial evidence supported the determination that the side effects did not present a significant problem).

In this case, the ALJ stated in his decision that he was applying the regulatory standard[8] and appropriately discounted Plaintiff's subjective complaints, which encompassed her allegations of medication side effects. *See* (R. 1377-79). After noting the Plaintiff's testimony about these issues, the ALJ found that "these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (R. 1379). He assessed her complaints as "not entirely consistent" with the evidence and identified several reasons throughout his decision for questioning the Plaintiff's subjective complaints. (R. 1379). These included that: (1) the Plaintiff was capable of helping her elderly mother in and out of a wheelchair (R. 1380); (2) her pain appeared to improve with treatment and medication (1379-81); (3) her physical and mental examinations were generally unremarkable (R. 1381); (4) her "overall high functionality during the timeframe at issue" (R. 1381); (5) she continually reported being stable on medication (R. 1382); and (6) a "noteworthy piece of information" from Dr. Downs-Spencer's treatment notes indicated that the Plaintiff quit her job not as a result of any disability, but because she became bored, and that she did not apply for disability until nearly two years later (R. 1383).

Although the ALJ did not explicitly discuss the Plaintiff's alleged medication side effects in his credibility findings, his decision nonetheless sufficiently indicates that he considered and rejected these subjective complaints. *See, e.g., Gantea v. Comm'r*

---

[8] Proper application of the regulatory standard satisfies this Circuit's pain standard. *See Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002).

*of Soc. Sec.,* 380 F. App'x 950, 951 (11th Cir. 2010); *Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903, 906 (11th Cir. 2006). In addition, other than the Plaintiff's report in 2009 that Lyrica caused her to experience "side effects" and dizziness (R. 244, 247), the Court finds no other instances where the Plaintiff complained of medication side effects to her doctors or nurses. Nor does the Plaintiff cite any in her memorandum. Indeed, the record reflects that, when asked about the matter, she repeatedly failed to report that suffered any such side effects. *See, e.g.,* (R. 1140-58, 1362-63).

Moreover, according to the record, the only doctor who expressed concerns about the Plaintiff's reaction to medication was Dr. Patel. He stated in his 2012 medical source statements that the Plaintiff's medications might cause sedation, lethargy, and headaches (R. 2058), and in his 2016 medical source statement that her medications might "impair judgment" (R. 2050). The Plaintiff herself, however, never complained about impaired judgment and the ALJ's RFC assessment arguably accounted for any such mental limitation by providing that the Plaintiff could only make "basic decisions and adjust to basic changes in the work setting." (R. 1377). Notably, Dr. Patel gave a contradictory opinion in his 2015 assessment, stating that the Plaintiff had *no* side effects from her medications. (R. 2054). Given these inconsistent statements by Dr. Patel—a pattern the ALJ cited for according the doctor's opinions little weight—the Court is unpersuaded that his notations regarding side effects required further explanation or warrant remand.

In sum, given the lack of medical evidence and the absence of any reports to her doctors during the relevant period, the Court cannot agree with the Plaintiff that

the ALJ erred in applying the "pain standard" in evaluating her alleged side effects. The ALJ adequately summarized and considered the Plaintiff's complaints regarding her reaction to her medications but ultimately found her not to be entirely credible. That credibility finding is supported by substantial evidence in the record and will accordingly not be disturbed.

### 2. *Activities of Daily Living*

As noted, one of the factors relevant to an ALJ's evaluation of subjective complaints is a claimant's activities of daily living. 20 C.F.R. § 404.1529(c)(3)(i); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints") (citation omitted); *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (considering the ability to perform such tasks as dialing a phone, writing, opening a door, buttoning, and unbuttoning in finding that a plaintiff retained the ability to perform sedentary work); *but see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians.").

In rendering his decision, the ALJ noted on three separate occasions that the Plaintiff was able: (a) to handle tasks such as showering, dressing, eating, preparing simple meals, performing light household chores, shopping in stores, walking and driving, watching television, handling her finances, feeding her cat, playing cards and "Words with Friends" on her phone; (b) to engage in hobbies such as quilting,

crocheting, knitting, scrapbooking, going to a scrapbooking meeting; and (c) to occasionally help care for her grandchild as well as her wheelchair-bound mother. (R. 1375, 1376, 1381). The Plaintiff argues that these activities were more limited than as described by the ALJ, and, as such, should not have been used a basis to discount her credibility, her subjective complaints, or her treating doctors' opinions. (Doc. 21 at 16-18). In response, the Commissioner concedes that the Plaintiff's reported daily activities are arguably less robust than the ALJ articulated, but asserts that, because the ALJ did not find these activities to be dispositive of her ability to work, any alleged error in mischaracterizing the activities is harmless. (Doc. 23 at 6).

Upon due consideration of the matter, the Court is constrained to agree with the Commissioner. Although the record can be read to support a finding that the ALJ's characterization of some of the Plaintiff's daily activities is somewhat exaggerated, substantial evidence supports the ALJ's decision to discredit the Plaintiff's subjective complaints based in part on these activities. Notably, the Plaintiff does not dispute that she can perform many of the activities the ALJ listed, such as showering, dressing, eating, preparing simple meals, performing light household chores, shopping in stores, walking and driving, playing cards and "Words with Friends" on her phone, and watching television. While the ALJ's reference to the Plaintiff's abilities to perform the other activities should perhaps have been qualified, that reference is not entirely inconsistent with the Plaintiff's own self-reports. In short, based on the Plaintiff's testimony and the other evidence of record, there is substantial

evidence to support a finding that the Plaintiff was able to conduct these activities, albeit not as frequently or easily as she used to.

Furthermore, as outlined above, the ALJ provided several reasons as bases for discounting the Plaintiff's credibility in addition to her daily living activities. These reasons, taken together, provide adequate support for the ALJ's assessment of the Plaintiff's subjective allegations. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### 3. *Other Reasons for Discounting Subjective Complaints*

The Plaintiff next challenges the ALJ's credibility finding on the grounds that he: (1) inappropriately cited an entry in Dr. Downs-Spencer's notes that the Plaintiff quit her job in 2010 due to boredom and not disability; (2) neglected the Plaintiff's allegations that she had difficulty being around all people, not just the general public; and (3) incorrectly found that her physical impairments were controlled with conservative treatment. (Doc. 21 at 28-31). These arguments are likewise unavailing.

With respect to the first contention, the Plaintiff points her own testimony as well as treatment records other than those cited by the ALJ to demonstrate that she stopped working due to disability. The Plaintiff's effort to bolster her credibility in this regard, however, misses the mark. As the ALJ correctly observed, Dr. Downs-Spencer's treatment note dated January 4, 2010 (the day after the Plaintiff's alleged onset date) indicated that the Plaintiff explained she had quit her job and stated "she

tends to change jobs every 2-3 yrs.  Once she gets used to a job she quits."  (R. 1340).

The ALJ fairly read this entry as reflecting that the Plaintiff terminated her employment due to boredom rather than a disabling condition.  (R. 1383).  Although there may be record evidence to suggest that the Plaintiff ceased working for other reasons, as the Plaintiff now argues, that evidence does not undermine the ALJ's reliance on the above-quoted entry to discount her allegations of disabling limitations.  The Court finds nothing inherently wrong in the ALJ using the Plaintiff's own statements to her doctor for the proposition that she quit her job for reasons other than disability.  It is, after all, the function of the Commissioner, not the Court, to weigh the evidence, to resolve conflicts in the evidence, and to assess credibility.  *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211); *Grant*, 445 F.2d 656.

With respect to social interactions, the Plaintiff suggests that the ALJ's determination that she was limited to frequent interaction with the public but not in crowded environments did not go far enough.  She claims that, given the ALJ's finding at step three that she had "moderate limitations" in interacting with others (R. 1376), the ALJ should have more fully credited her subjective allegations that she had trouble being around all people in the step four determination.

Once again, the Court is unpersuaded.  Although the record certainly reflects some familial issues, including allegations of sexual abuse, as well as problems with her husband, grandchildren, and brother, there is little support in the record to evidence that the Plaintiff was more limited in her social interactions in the workplace, as she now alleges.  The ALJ was under no duty to include more extreme limitations

on the Plaintiff's ability to interact than he did, and the Plaintiff has failed to demonstrate otherwise.

Finally, the Plaintiff contends that the ALJ's findings that her pain appeared to improve with treatment and medication is unsupported. As acknowledged by the ALJ, the Plaintiff had severe impairments related to her lumbar spine. (R. 1375). As the ALJ also observed, the treatment records related to this physical impairment documents a long history of medication pain management, steroid injections, chiropractic adjustments, acupuncture, and physical therapy. (R. 1379-1381, 1386). Of note in this regard, the ALJ cited, discussed, and afforded "significant weight" to the treatment records of the Plaintiff's orthopedist/pain management doctor, Jennifer Burns, M.D. (R. 1386). Nonetheless, the Plaintiff asserts that the ALJ's decision to discount her subjective allegations of pain are flawed because the ALJ ignored those treatment records that showed her symptoms were not controlled by conservative measures. In support of this contention, the Plaintiff points to the numerous steroid injections she received without long-term relief and a November 2012 MRI that revealed objective evidence of a worsening condition.

Despite the Plaintiff's position that her pain was not adequately controlled, a fair reading of the record provides substantial evidence to support the ALJ's conclusion. The longitudinal treatment records over the course of the relevant time period indicate that, although the Plaintiff's pain waxed and waned, she consistently experienced improvement with treatment. Dr. Burns's records reveal that the

Plaintiff's pain diminished after she began lumbar facet joint injections in late 2009 and reported improvement with injections in 2010. *See, e.g.,* (R. 324, 971, 1010, 1033).

In 2011, the Plaintiff complained that her pain was aggravated by a twenty-hour road trip to Virginia (R. 344), by playing Marco Polo in the swimming pool (R. 345), and by an acute strain (R. 1136). During this same time period, however, she reported that she was doing much better with acupuncture, that her pain medications were lasting longer, and that she was sleeping better. (R. 347).

In 2012, the Plaintiff's pain appeared to go up and down again, and the November 2012 MRI revealed moderate effacement of the right L5-S1 nerve root. (R. 1218, 1223).[9] Upon review of that MRI, Dr. Burns sent the Plaintiff to physical therapy, which the Plaintiff had not previously undergone for two years. (R. 1218). Shortly after resuming physical therapy, the Plaintiff noted "significant improvement" as of January 2013 (R. 1221). The treatment notes of the Plaintiff's primary care physician, Dr. Michael Zimmer, likewise reflect that the Plaintiff reported improvement with the injections. *See, e.g.,* (R. 1010, 1033, 1163, 1263, 1274, 1291, 1307, 1313, 1326).

---

[9] As the Plaintiff argues, the ALJ does not explicitly refer to the November 2012 MRI in his decision. He does, however, cite Dr. Burns's records containing the MRI, recognizes Dr. Burns's finding that the Plaintiff had degenerative changes and disc protrusion at L4-5 and L5-S1, and explicitly states that he gave those records significant weight. (R. 1386). Given this discussion, the Court is satisfied that the ALJ sufficiently reviewed and considered the November 2012 MRI as part of his evaluation of the whole record. *See Dyer*, 395 F.3d at 1211 (citation and internal quotation marks omitted) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the ALJ's decision allows the conclusion that the ALJ considered the claimant's medical condition as a whole).

To be sure, the Plaintiff was not pain-free as a result of her treatments and medications, and the ALJ made no finding that she was. Rather, the ALJ found reason to discount the Plaintiff's subjective allegations based on a record he reasonably interpreted as buttressing his conclusion that her symptoms were under control using the conservative measures her doctors prescribed. The Court finds no basis to overturn this conclusion or the ALJ's credibility findings in general.

C.

*ALJ's RFC Finding and Hypothetical to the VE*

By way of her last argument, the Plaintiff claims that the ALJ's RFC assessment and the hypothetical question he posed to the VE were incomplete and/or based on an inaccurate reading of the evidence. (Doc. 21 at 25-28). This contention is inextricably intertwined with the Plaintiff's previous arguments, rejected above, that (a) the ALJ improperly assessed the medical record and opinions; (b) her activities of daily living were more limited than the ALJ stated; (c) her pain was not adequately controlled by treatments or medications; (d) her social functioning was more restricted than the ALJ found; and (e) the ALJ ignored the November 2012 MRI that showed worsening symptoms.

For similar reasons as the Court explained above, the Court finds no error in the ALJ's RFC finding or in the hypothetical question posed to the VE in support of the vocational decision. As noted, the RFC analysis requires the ALJ to make a determination based on the claimant's medical condition "taken as a whole" *Jamison*, 814 F.2d at 588, after reviewing the medical opinions, the claimant's allegations of subjective symptoms, and all of the other relevant evidence. 20 C.F.R. §§ 404.1520(e),

404.1545(a). As long as the ALJ considers this evidence, the final responsibility for deciding a claimant's RFC and ability to work rests with him. 20 C.F.R. § 404.1527(d)(2).

A fair reading of the ALJ's decision here indicates that he evaluated both the record and the Plaintiff's condition as a whole, and then assessed an RFC for the Plaintiff that included significant limitations in both her physical and mental capacities. The Plaintiff's contention that the ALJ abdicated his responsibility to make a full and complete review of the relevant evidence or her subjective allegations is without support. As outlined above, the ALJ's assessment of the opinion evidence from the Plaintiff's treating doctors, his evaluation of the Plaintiff's subjective complaints, and his review of the medical evidence, including the November 2012 MRI, is supported by substantial evidence. The Plaintiff fails to demonstrate that the ALJ's RFC assessment does not fairly cover her limitations or that her limitations are greater than as determined by the ALJ. As such, the Plaintiff has not shown that the RFC finding is in error.

As for the Plaintiff's related contention regarding the hypothetical the ALJ posed to the VE, the ALJ was not required to include in that hypothetical RFC limitations he had rejected. *Crawford*, 363 F.3d at 1161 (an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported).

IV.

For the foregoing reasons, it is hereby ORDERED:

1)      The Commissioner's decision is AFFIRMED.

2)      The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

DONE and ORDERED in Tampa, Florida, this 29th day of March 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record